LIVINGSTON *vs.* THE PERU IRON COMPANY and others.

Where the vendee applied to the vendor to purchase a lot of wild land, and
represented to him that it was worth nothing except for the purpose of a
sheep pasture, when he knew there was a valuable mine on the lot, of the
existence of which the vendor was ignorant, *held*, that this was such a fraud
as would avoid the purchase.

Although a simple suppression of the truth by one of the parties to a contract
may not be sufficient to authorize a court to set it aside, yet if any thing is
said or done to mislead or deceive the other party to the same, the court
will grant relief against the contract.

The court of chancery will not compel a specific performance of a contract if
the complainant intentionally concealed a material fact from the defendant,
the disclosure of which would have prevented the making of the contract.

Where the vendor is dead, all his heirs at law should be parties to a bill to set
aside the sale on the ground of fraud upon the part of the vendee.

If the vendor makes a subsequent conveyance, while the fraudulent ven-
dee is in actual possession claiming the land under his prior purchase, the
subsequent conveyance is inoperative; and a suit to set aside the first sale
must be brought in the name of the vendor, or of his legal representatives
if he is dead.

*April 5th.*　　　THE bill in this cause was filed by the son and grantee of
John Livingston deceased, to set aside the conveyance of a lot
of land, on the ground of fraud.　The bill stated among other
things, that Palmer, one of the defendants, applied to J. Liv-
ingston to purchase the land in question, which was then wild
and uncultivated, and that he falsely represented to Livingston
that the same was of little or no value except for a sheep pas-
ture, for which purpose he wanted the lot; whereas in point
of fact he had previously discovered a valuable ore bed on the
premises; which fact he fraudulently concealed from Living-
ston.　The bill also stated that in consequence of this rep-
resentation and fraudulent concealment, Livingston was in-
duced to sell 164 acres of land to Palmer at $2 per acre;
when the ore bed alone was worth $70,000.

The Peru Iron Company demurred to the bill for want of
equity.　They also showed for special grounds of demurrer,
that it appeared by the bill that the complainant was not the
sole heir at law of his father; that the conveyance to him, in
January 1820, while the defendants were in possession claim-
ing the land as their own under the previous conveyance, was
void by the statute against buying pretended titles; and that

all the heirs at law should have been made parties to the suit.

*J. L. Mason,* for the defendants. All the heirs at law of John Livingston should have been made parties to the bill. The mere concealment by Palmer, one of the defendants, of the fact of his discovery of the ore bed on the premises purchased from John Livingston is not such a fraud as will authorize a court of equity to set aside the sale. (*Whelan* v. *Whelan,* 3 Cowen's R. 560. Chitty on Contr. 223. Sugd. Vend. 1. The Dos Hermanos, Green claimant, 2 Wheaton's R. 78. *Fox* v. *Mackreth,* 2 Brown's Cas. in Ch. 420. *Lessee of Eichelberger* v. *Barnitz,* 1 Yeates' R. 307. 2 Kent's Com. 377, 380, 381. *Dale* v. *Roosevelt,* 5 John. Ch. R. 174. *Vernon* v. *Keys,* 12 East's R. 632. Sugd. Vend. 3, and note.) A false affirmation as to value is not a ground of setting aside a contract for the sale of land. The complainant is not entitled to a decree upon the case made by his bill. (4 Kent's Com. 438.)

*J. Van Orden,* for the complainant. The conveyance to Palmer was void. The fraud committed by him is a sufficient ground to authorize the court to set it aside. (*Monell* v. *Colden,* 13 John. R. 395. Sugden's Law of Vend. 193, 246, 289. 1 Fonbl. Eq. 70, 71.) The conveyance to the complainant by John Livingston was valid. If it cannot otherwise operate, it will be considered as a testamentary disposition, which an adverse possession cannot defeat. (*Jackson* v. *Sebring,* 16 John. R. 515.)

THE CHANCELLOR. Upon the merits of this case the demurrer cannot be sustained. I am not aware of any case in our own courts, or in England, where the simple suppression, by the buyer, of a fact which materially enhanced the value of the property, has been deemed sufficient to set aside the sale, on the ground of fraud. The rule is different where the purchaser applies to a court of equity to enforce the specific performance of an agreement. In such a case this court will not enforce a specific performance of the contract, if the complainant has intentionally concealed a material fact from the adverse party, the disclosure of which would

have prevented the making of the agreement ; but he will be left to his remedy at law. It has even been questioned by many whether the suppression of a material fact by the one party, of which fact he knew the other party to be ignorant, was not of itself sufficient to avoid the contract on the ground of fraud. Thus in *Perkins* v. *M'Gavock*, (Cook's Rep. 417,) the court of errors and appeals in Tennessee say, it is a sound principle of equity that each party to a contract is bound to disclose to the other all he knows respecting the subject matter materially affecting a correct view of it, unless common observation would have furnished the information. They also say that the neglect to disclose facts within the knowledge of one party, and not of the other, would in equity be considered a concealment which is both immoral and unjust. Although our courts have not gone that length, yet, even in this state, very slight circumstances, in addition to the intentional concealment of a fact, have been considered *sufficient to* constitute a fraud upon the other party. Thus in *Wendell* v. *Fosdick & Davis*, (13 John. R. 325,) where the defendants had taken a deed of land which they afterwards ascertained had no actual existence, and after this they sold and assigned their interest under that deed to the plaintiff, without disclosing to him that fact, he was permitted to recover against them for the fraud. So also in *Monell & Weller* v. *Colden*, (id. 395,) where the vendor of a water lot, knowing that the purchasers wanted to buy the lot for the purpose of obtaining the privilege of a wharf, represented to them that the owners of land bounded on the water had a right by law to apply to the commissioners of the land office for a grant of the privilege to build a wharf adjacent to the land, whereas he in fact knew that the lands under the water *had been previously granted*, the purchasers were allowed to recover for the fraud. And in a recent case before Lord Eldon, he adverts to the general principle that parties dealing for an estate have a right to put each other at arms length ; and that if the purchaser knows there is a mine upon the estate, and the vendor makes no enquiry, the former is not bound to give him information thereof. But he says " very little is sufficient to affect the application of that principle. If a word, if a single word, be dropped which tends to mislead the vendor, that

principle will not be allowed to operate." (*Turner* v. *Harvey*, Jacob's R. 178.) And certainly if the purchaser does any act, or makes any declaration, with the intention of misleading the seller and preventing him from ascertaining the real situation of the property, and at the same time conceals from him a fact which he knows to be material, he is guilty of a fraudulent deception.

From the statement in the bill this case appears to be one of that description. The defendant Palmer had discovered a valuable mine on the lands of Livingston, which were then wild and uncultivated and lay remote from the residence of the latter. Knowing that he could not obtain the land if he discovered the fact of the existance of the mine, he does not content himself with making a bargain, in the language of Lord Eldon, at arms length ; but he falsely and fraudulently represents the the land as being of no value except for a sheep pasture, and states that he wants it for that purpose. By this deception the vendor is thrown completely off his guard, and he contracts to sell the land at the usual rate or' price, of rough broken land in that region, instead of directing his agent, near the premises, to enquire and ascertain its true value.

But I think there is an insuperable objection to the complainant's recovering upon his bill in its present shape. Although the conveyance of the land was obtained by a fraudulent misrepresentation, it was not void. It was only voidable, at the election of the vendor. And the defendants or some of them were in the actual possession of the premises, claiming title to the same under their deed, at the time of the conveyance to the complainant. The legal title to this property could not pass to the complainant, under that conveyance, while it was thus held adversely. If John Livingston was still living he would be a necessary party to a bill to rescind the sale on the ground of fraud. Since his death, all his heirs at law, or the devisees of this particular part of his estate, are necessary parties. I lay out of question what was said on the argument as to this conveyance to the complainant being in the nature of a testamentary disposition of his property, to carry into effect a previous arrangement. The

Vol. II. 50

1831.

Livingston
v.
Peru Iron Co.

deed of January 1820, is not set up in the bill as a devise of the estate, but as an absolute grant; neither is it stated to have been executed in due form of law as a will of real estate.

The demurrer must therefore be allowed, with liberty to the complainant to amend his bill by making all the heirs at law, or the devisees of John Livingston, parties thereto, on payment of costs. And if he does not amend within sixty days, the bill must be dismissed, with costs to the defendants.

It may be proper however to suggest that if the fact is, as stated by the defendant's counsel, that John Livingston devised no part of this land to the complainant, but that he actually made a will by which it was devised to other persons, under the general description of all the residue of his estate, no amendment can help the complainant. (a)  In that case it will be necessary to dismiss the bill in this suit, and to bring a new action in the names of those to whom the legal title passed on the death of John Livingston, if they shall be advised to proceed further in this matter.

(a) See *The King of Spain* v. *Moichade*, 4 Russ. R. 225 ; *Cuff* v. *Platell*, id. 242 ; *Makepeace* v. *Haythorne*, id: 244.